**In re Jill C. DEUEL, Debtor.**

**Chase Manhattan Bank, USA, N.A., a nationally chartered bank, Plaintiff,**

**v.**

**Jill C. Deuel; Will T. Deuel; Harold S. Taxel, Chapter 7 Trustee; and Lakeview Carlton Hills Homeowners Association, Defendants.**

**Bankruptcy No. 04–02787–LT7.**
**Adversary No. 04–90460–LT.**

United States Bankruptcy Court, S.D. California.

Sept. 28, 2012.

James C. Mitchell, Mitchell & Gilleon, San Diego, CA, for Plaintiff.

Jill C. Deuel, Santee, CA, pro se.

Kathleen A. Cashman–Kramer, Michael Y. MacKinnon, Pyle Sims Duncan & Stevenson, APC, Debora M. Zumwalt, Epsten Grinnell & Howell, APC, San Diego, CA, for Defendants.

## MEMORANDUM DECISION [1]

LAURA S. TAYLOR, Bankruptcy Judge.

In 2004, Chase Manhattan Bank, USA, N.A. ("Chase") initiated this adversary proceeding. The underlying facts are set out in numerous prior decisions including, most recently, a Ninth Circuit decision decided adversely to Chase. *See Chase Manhattan Bank, USA, Inc. v. Taxel (In re Deuel)*, 594 F.3d 1073 (9th Cir.2010). In briefest summary, Chase extended a loan to debtor Jill Deuel ("Debtor") and her non-filing, now former spouse, Will Deuel,[2] and the Deuels used the loan proceeds, in part, to repay Chase on account of a previous loan. The Debtor executed and delivered a trust deed in order to collateralize the new loan (the "New Trust Deed"), and Chase reconveyed the trust deed securing the note evidencing the prior loan. What Chase inexplicably failed to do was record the New Trust Deed.

The Debtor filed her bankruptcy case and scheduled the Chase obligation as a secured claim. Chase, knowing better, initiated this adversary proceeding (the "Chase Adversary") to quiet title to the property and to obtain a declaratory judgment that the New Trust Deed, notwithstanding its lack of perfection through recordation, constituted a senior lien enforceable against the Debtor, a junior lienholder HOA, and the Trustee.

Chase initially fared well. The Trustee filed a motion under Federal Rule of Civil Procedure 12(b)(6) requesting that the Court dismiss the Chase Adversary without prejudice and requesting, in the alternative, that the Court grant it summary judgment. The Trustee based his defenses squarely on section 544 [3] and his strong arm powers. The Trustee argued that the New Trust Deed was subject to set aside as a result of its unperfected status. Chase countered arguing that the New Trust Deed was entitled to enforcement and priority, notwithstanding section 544, based either on alleged constructive or inquiry notice [4] provided to the Trustee by the Debtor's schedules or based on principles of equitable subrogation. This Court, the Honorable John J. Hargrove presiding, agreed with Chase.

Chase's victory, however, was brief. The Bankruptcy Appellate Panel reversed and the Ninth Circuit thereafter affirmed. Chase attempted Supreme Court review, but the Supreme Court rejected its writ of certiorari.

As a result, the final non-appealable determination in the Chase Adversary was

---

1. This opinion is intended only to resolve the dispute between these parties and is not intended for publication.

2. Through a separate related adversary proceeding, the Trustee obtained a judgment by default against Debtor's former spouse which, in effect, brought the property against which Chase asserted its lien rights into the Debtor's estate free of Mr. Deuel's interest. See Adv. Proc. 07–90277. For ease of reference herein, the Court will refer to Chase's borrower solely as the Debtor.

3. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Court will reference the California Civil Code and California Code of Civil Procedure as CC Section and CCP Section respectively.

4. Chase based this argument on *In re Professional Investment Properties of America*, 955 F.2d 623, 629 (9th Cir.1992).

that the New Trust Deed was subject to set aside under section 544. Thus, Chase's claims for declaratory relief and quiet title failed.

The judge currently presiding in this matter became involved in 2008. For most of the years since then, her involvement has consisted of status conferences and monitoring of the initial decision's path through the appellate system. More recently, however, the parties requested that the Court decide those issues lingering after a decision on the merits. The Court previously determined that the Trustee was entitled to interest at the federal judgment rate on his recovery from Chase of the value of the avoided New Trust Deed. See Adv. Dkt. # 131. The bigger issue, at least in terms of the amount at issue, however, is whether Chase must also pay the Trustee's attorneys' fees. As discussed hereafter, the Court, while extremely sympathetic to the Trustee's travails in connection with this matter, finds that the parties must pay their own attorneys' fees.

**STANDARDS.**

Under the American Rule, each party ordinarily must pay its own attorneys' fees unless a contract or a statute provides otherwise. *Fry v. Dinan (In re Dinan)*, 448 B.R. 775, 784 (9th Cir. BAP 2011); *Cargill, Inc. v. Souza*, 201 Cal. App.4th 962, 966, 134 Cal.Rptr.3d 39 (2011). Consistent with the American Rule, the Bankruptcy Code does not provide a general right to attorneys' fees recovery by a successful litigant. *Fry*, 448 B.R. at 784. Instead, except for the limited areas where the Bankruptcy Code expressly allows fee recovery, a bankruptcy court awards fees arising in an adversary proceeding filed in a bankruptcy case only when the party requesting fees would be able to recover the fees outside of bankruptcy under state or federal law. *Id.* at

785. The parties agree that the resolution of this fee dispute requires application of California law.

In California, a determination of fee entitlement begins with a consideration of CCP Section 1032. CCP Section 1032 provides, in subdivision (b), that: "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." *Santisas v. Goodin*, 17 Cal.4th 599, 606, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998). CCP Section 1033.5(a)(10) then provides that attorneys' fees are allowable as costs under CCP Section 1032 when fee recovery is authorized by either contract, statute, or other law. Thus under California law, recoverable litigation costs can include attorneys' fees, but only when the party requesting costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorneys' fees. *Id.* at 606, 71 Cal.Rptr.2d 830, 951 P.2d 399. Where a party claims a right to recover attorneys' fees based on a contract, the claiming party typically must first establish the existence of a valid enforceable agreement that contains an attorneys' fees provision, and then must establish that the provision entitles recovery of attorneys' fees under the particular circumstances of the litigation. *Id.* at 607, 71 Cal.Rptr.2d 830, 951 P.2d 399.

Absent contractual language providing otherwise, a contract providing for attorneys' fees to be awarded to a contracting party does not typically apply to a non-signatory party. *See Cargill*, 201 Cal. App.4th at 966 & 968–969, 134 Cal.Rptr.3d 39. However, a non-signatory party may be entitled to contractual attorneys' fees for litigation in which "the non-signatory party 'stands in the shoes of a party to the contract.'" *Id.* at 966, 134 Cal.Rptr.3d 39

(citation omitted). That is, if the non-signatory party sues or is sued "as if he were a party" to the contract containing the attorneys' fees provision, the prevailing party may be entitled to an award of fees. *Reynolds Metals Co. v. Alperson,* 25 Cal.3d 124, 127–128, 158 Cal.Rptr. 1, 599 P.2d 83 (1979) (non-signatory party who was sued as alter ego of signatory party entitled to contractual attorneys' fees); *Cargill,* 201 Cal.App.4th at 966–970, 134 Cal.Rptr.3d 39 (third party beneficiary of contracting party entitled to attorneys' fees); *Exarhos v. Exarhos,* 159 Cal.App.4th 898, 900 & 903–908, 72 Cal.Rptr.3d 409 (2008) (non-signatory party who sued as deceased contracting party's successor in interest required to pay contractual attorneys' fees); *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.,* 96 Cal.App.4th 598, 601 & 608, 117 Cal.Rptr.2d 390 (2002) (non-signatory party who brought action based on assignment of contract rights from signatory party required to pay contractual attorneys' fees). Also, a chapter 7 trustee in a debtor's bankruptcy case succeeds to all rights of the debtor under its contract and, thus, is entitled to assert the debtor's contractual right to recover attorneys' fees. 11 U.S.C. § 541(a)(1).

■ In any action on a contract, where a contractual provision provides a right to attorneys' fees recovery to one party, but not to the other, CC Section 1717 ensures mutuality. *Santisas,* 17 Cal.4th at 611, 71 Cal.Rptr.2d 830, 951 P.2d 399. CC Section 1717 states that: "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, [the prevailing party] on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorneys' fees." Cal. Civ.Code § 1717(a). CC Section 1717, thus, allows recovery of attorneys' fees by whichever contracting party prevails in a contract enforcement action, whether the prevailing party is the party specified in the contract or not. *Santisas,* 17 Cal.4th at 611, 71 Cal.Rptr.2d 830, 951 P.2d 399 (citation omitted). CC Section 1717 applies, however, only to actions that contain at least one contract claim. *Id.* at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399 (citation omitted). The action must be "on the contract" and the party must prevail "on the contract."

■ If an action asserts both contract and tort or other noncontract claims, CC Section 1717 generally applies only to the attorneys' fees incurred in litigating the contract claims. *Id.* (citation omitted). Thus, where a complaint does not contain a breach of contract claim, but is based solely on other theories, CC Section 1717 is not applicable. *Redwood Theaters, Inc. v. Davison (In re Davison),* 289 B.R. 716, 724 (9th Cir. BAP 2003). In *Davison,* the debtor prevailed on a nondischargeability action based solely on fraud, and sought recovery of attorneys' fees based on CC Section 1717 and CCP Section 1021, and a provision in an agreement between the debtor and the complaining creditor that allowed attorneys' fees to the prevailing party in "any action at law or in equity" if it was "to enforce or to interpret" the terms of the agreement. *Id.* at 725. The Panel determined that the bankruptcy court was not "enforcing or interpreting the terms of the Agreement" when it decided the fraud claim and that the debtor was not entitled to attorneys' fees under the agreement. *Id.; see also Terra Nova Industries, Inc. v. Chen (In re Chen),* 345 B.R. 197 (N.D.Cal.2006) (debtor was not entitled to attorneys' fees under CC Section 1717 based on a contract provision allowing fees to the prevailing party "to enforce the rights under the agreement", where the court did not interpret or enforce any particular provision of the contract in the underlying tort judgment).

■ Nonetheless, if a contractual attorneys' fees provision is phrased broadly enough, it may support an award of attorneys' fees in actions unrelated to the contract; parties may validly agree that the prevailing party will be awarded attorneys' fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract. *Id.* at 608, 71 Cal. Rptr.2d 830, 951 P.2d 399 (citation omitted).

## DISCUSSION.

### A. The Trustee Is Not Entitled To Attorneys' Fees Based On Estoppel.

The Trustee argues that the estate is entitled to recover attorneys' fees based on principles of estoppel. He argues first that Chase unequivocally demanded attorneys' fees in its complaint and in the bankruptcy court's order and judgment. He, thereafter, argues generally and generically that estoppel applies. The Court determines that these arguments fail.

### 1. Chase Did Not Unequivocally Request Attorneys' Fees In Its Complaint Or In Its Order And Judgment.

■ Contrary to the Trustee's assertion, Chase did not unequivocally state that it was entitled to attorneys' fees in any of its complaint, order, or judgment. In the complaint, Chase's prayer for relief requested: "Reasonable attorneys (sic) fees, if appropriate." Adv. Dkt. # 1 at 5:14. Chase's Order Denying Defendants' Motion To Dismiss/Summary Judgment And Granting Plaintiff's Cross–Motion For Summary Judgment included an award of: "... cost of suit and, if allowed by law, reasonable attorneys' fees." Adv. Dkt. # 35 at 3:6–7. Finally, Chase's Judgment on Plaintiffs Cross–Motion For Summary Judgment included an award identical to that included in the order. Adv. Dkt. # 45 at 2:20–21. Such language falls far short of an admission that attorneys' fees were available to Chase under its contract with the Debtor in relation to this adversary proceeding. Instead, the language is suggestive of a not unreasonable desire to keep the possibility of fee recovery open.

The Court notes that inclusion of an attorneys' fees request in a complaint and in a judgment is the rule rather than the exception. Attorneys appear to somewhat reflexively include this language. This Court is not alone in this observation. *See Goldbaum v. The Regents of the University of California,* 191 Cal.App.4th 703, 716, 119 Cal.Rptr.3d 664 (2011) ("many pleadings include a prayer for attorneys' fees out of an abundance of caution, and a mere prayer for fees is an insufficient ground for an award of fees to the opposing party under a reciprocal fee statute"). Here, however, Chase actually qualified the request and never expressly based the request on its contract, even though the dispute arose in relation to and in the context of contracts that contain attorneys' fees provisions.

The Trustee does not support his argument that such conditioned language estops Chase from arguing that attorneys' fees are unavailable to the Trustee. This Court determines that Chase's abundance of caution and conditional fee request falls far short of a specific admission that attorneys' fees are available under any theory. As a result, the Trustee's estoppel argument fails to the extent based on this argument.

### 2. To The Extent The Estoppel Theory Has A Continuing Support In California Case Law, Such Support Is Dwindling, And This Court Will Follow More Recent Law Affirming That Estoppel Does Not Support An Attorneys' Fees Request.

In *Pas v. Hill,* a California Court of Appeal suggested in dicta that equitable

estoppel could form the basis for a fee award where a party alleges and attempts to prove that the other party would be obligated to pay fees pursuant to a contractual attorneys' fees provision. 87 Cal. App.3d 521, 535–36, 151 Cal.Rptr. 98 (1978). In a later decision, the same Court of Appeal acknowledged that equitable estoppel might provide a path to fee recovery, but chose a different one. *Saucedo v. Mercury Sav. & Loan Assn.*, 111 Cal. App.3d 309, 310–315, 168 Cal.Rptr. 552 (1980). Other decisions provide some support for the theory that merely claiming fees supports the opposing party's fee recovery request when it prevails. *See, e.g., International Billing Services, Inc. v. Emigh*, 84 Cal.App.4th 1175, 1189, 101 Cal. Rptr.2d 532 (2000) (discussion of estoppel theory; court notes that a pleader should not be able to threaten another party with a fee award and then avoid a fee award if unsuccessful); *see also Manier v. Anaheim Business Center Co.*, 161 Cal.App.3d 503, 505–507, 207 Cal.Rptr. 508 (1984) (fees awarded in relation to breach of contract and specific performance claims notwithstanding that court determined that a contract did not exist); *Jones v. Drain*, 149 Cal.App.3d 484, 489, 196 Cal.Rptr. 827 (1983) (fees awarded to defendant on breach of contract action where defendant prevailed in establishing that a contract did not exist); but see *M. Perez Co. v. Base Camp Condominiums Assn. No. One*, 111 Cal.App.4th 456, 464–69, 3 Cal. Rptr.3d 563 (2003) (*International Billing's* reliance on estoppel theory repudiated).

Estoppel theory states: "If one merely alleges a right to recover attorneys' fees one is estopped from contending that he or she could not recover them if the other party prevails and claims attorneys' fees." *Sessions Payroll Management, Inc. v. Noble Construction Co.*, 84 Cal.App.4th 671, 681, 101 Cal.Rptr.2d 127 (2000), citing *Leach v. Home Sav. & Loan Assn.*, 185 Cal.App.3d 1295, 1306, 230 Cal.Rptr. 553 (1986). The *Leach* court rejected estoppel theory noting that the case that originated the theory had since been overturned. 185 Cal.App.3d at 1306, 230 Cal.Rptr. 553. *Sessions* similarly rejects the theory and cites numerous other cases which found estoppel theory wanting as a basis for fee recovery.

■ The Court determines that the estoppel theory is an inappropriate vehicle for shifting liability for attorneys' fees in any event and particularly so given the equivocal nature of the attorneys' fees "demand" and "award" in this case. Instead, attorneys' fees, if awarded, must be otherwise recoverable by contract, statute, or at law.

This Court finds compelling those California decisions that firmly reject estoppel theory. *See Blickman Turkus, L.P. v. M.F. Downtown Sunnyvale, LLC*, 162 Cal. App.4th 858, 898–900, 76 Cal.Rptr.3d 325 (2008). *Blickman Turkus* provides an overview of the attorneys' fees estoppel theory and a clear catalog of its infirmities. The Court cannot improve on the *Blickman Turkus* analysis; it is compelling. Key points that persuade the Court that the estoppel theory is not applicable include: (1) the fact that merely praying for a relief to which one is not entitled cannot ordinarily engender reliance or detriment giving rise to estoppel; (2) that a prayer for relief is not the kind of fraud on the court to which the doctrine of judicial estoppel is directed. If it was, then theoretically all or most losing parties would be guilty of fraud on the court in connection with unsuccessful legal actions; (3) more specifically, the inclusion of an attorneys' fees request is not sufficient to justify an equitable award of attorneys' fees. If it were, then the prayer for millions of dol-

lars in damages in an unsuccessful complaint would correctly be the basis for fee shifting. There is no need to treat a fee request differently than the other prayers for relief in a complaint; and (4) finally, no California statute authorizes attorneys' fees recovery when neither party would otherwise be entitled to fee recovery. *Id.*

In *Goldbaum,* the Fourth Appellate District California Court of Appeal also expressly rejected the estoppel theory. *See* 191 Cal.App.4th at 715–716, 119 Cal. Rptr.3d 664. As this Court of Appeal authored the initial case law in this area, the clear denunciation of the doctrine in *Goldbaum* is instructive.

In short, estoppel theory does not form a basis for a fee award here; it is of dubious legitimacy in all cases and its application is particularly inapt here given the qualified nature of the fee request.

**B. The Trustee Is Not Entitled To Contractual Attorneys' Fees.**

 Chase initiated this adversary proceeding through the filing of an eight page complaint that consisted of a quiet title action and a declaratory judgment action. The request for relief requested confirmation that Chase's deed of trust was a lien against the property as of September 4, 2002 and that this lien was senior to the rights of the defendants. The complaint attached the relevant deed of trust at Exhibit 8.

The deed of trust included language providing that Chase: "may charge borrower fees ... for the purpose of protecting lenders' interest in the property and rights under this Security Instrument, including, but not limited to, attorneys' fees." It also included a provision that Chase could add to the amounts due on its note, attorneys'

fees incurred if "there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, ... for enforcement of a lien which may attain priority over this Security Instrument ... Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including ... (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest ... including its secured position in a bankruptcy proceeding." This provision goes on to state that; "[any] amounts disbursed by Lender under this Section 9 shall become additional debt of the borrower." The language is broad and facially suggestive of Chase's right to recover attorneys' fees here. In the final analysis, however, the Court determines that neither Chase nor the Debtor would be entitled to contractual attorneys' fees as a prevailing party and that the Chase Adversary did not involve a claim "on a contract." As these are the critical inquires under California law, the Trustee's request for attorneys' fees must fail.

**1. The Trustee Did Not Prevail Based On Contractual Rights Held By The Debtor.**

As the Trustee correctly notes, the Trustee exercises all rights of the Debtor and can assert all claims of the Debtor in connection with this case. Thus, to the extent the Trustee were asserting a claim of the Debtor under a relevant contract, the Trustee's attorneys' fees argument could have merit. The Trustee, however, does not assert such claims here.

The Trustee's arguments as to the breadth, depth, and wide extent of the

Debtor claims that he controls under section 541 cannot disguise the fact that the Trustee does not assert any claims held by the Debtor in connection with the Chase Adversary. The Trustee responded to the complaint under rules 7012 and 7056 seeking either dismissal with prejudice or summary judgment in his favor on the Chase complaint. The Trustee's position was clearly set forth in the motion where he stated "... the Trustee's rights are superior to the unrecorded and unperfected claimed lien of the Plaintiff pursuant to the provisions of Section 544 of Title 11 of the United States Code." Dkt. # 5 at 2:18–20. Consistent with this characterization, the Ninth Circuit described this dispute as follows:

> We address the "strong-arm power" of the bankruptcy trustee under 11 U.S.C. § 544(a)(3) and in the context of an unrecorded deed of trust. The question comes down to whether a bona fide purchaser for value without notice can take ahead of an unrecorded lien, and once the question is put that way, the answer is obviously "yes." Dkt. # 82 at 2:2–23.[5]

Here the Trustee stood in the shoes of a bona fide purchaser for value without notice and asserted claims arising under section 544 of the Bankruptcy Code. He did not assert any rights of the Debtor under the note, trust deed, or other contract. The New Trust Deed was attached to the complaint to provide context for a request that the unrecorded New Trust Deed be entitled to priority as of a date certain. The Trustee correctly disputed this assertion based on his hypothetical bona fide purchaser rights and the Bankruptcy Code, not under the contract. Neither the Bankruptcy Code nor section 544 independently allow attorneys' fees recovery. *See*

*In re Seaway Express Corp.*, 105 B.R. 28, 32 (9th Cir. BAP 1989), aff'd 912 F.2d 1125 (9th Cir.1990). Where the Trustee asserts bona fide purchaser rights rather than rights under the contract, the contract's terms, including its attorneys' fees provisions, typically are irrelevant. And that is certainly the case here.

## 2. Chase Asserted Claims In The Context of A Contract—Not Based On A Contract.

Had Chase attempted to require the Debtor or the Trustee to record the New Trust Deed, to execute another trust deed, or to affirmatively take other steps to support the enforceability and priority of its lien based on provisions in its contracts with the Debtor, and had the Trustee defended against this position, the prevailing party could rely on a contractual attorneys' fees provision. In such a case, the action would be squarely on the contract. Here, however, Chase merely requested a determination that the unrecorded lien had priority.

While it attached contracts to its complaint Chase did not assert any claim based on the provisions of contracts, and the existence of these contracts was undisputed. The Chase Adversary never required contractual interpretation or enforcement. Thus, the Chase Adversary involved a contract, but was not an action on a contract within the meaning of CC Section 1717. Chase based its priority arguments on equitable subrogation and on a notice argument based on *Professional Investment*. The Trustee attacked Chase's claim to a first priority secured claim based on section 544. This was litigation that involved a contract, but nothing

5. *Chase Manhattan Bank,* 594 F.3d at 1075.

more. Had the formal adjudication of this dispute been commenced by the Trustee's section 544 complaint, it is unlikely that the Trustee would request contractual attorneys' fees; and it is certain that they would not be recoverable. Such an action would arise under the Bankruptcy Code—not under a contract. The fact that the formal adjudication commenced as a quiet title and declaratory relief action does not change the analysis. The Trustee immediately asserted section 544 claims, and the Chase Adversary—notwithstanding its initiating complaint—was in substance a section 544 action.

### 3. Chase Was Not Entitled To Recover Its Fees.

Parties to a contract can, of course, expand contractual rights as they deem appropriate. The Court acknowledges that the language of the relevant trust deed is indeed broad. The question, however, becomes did the parties to this contract intend that Chase could recover from the Debtor if it successfully defended against the Trustee's section 544 claims. In order for an attorneys' fees provision to be enforceable pursuant to CC Section 1717 against the party not named in the contract, it must be one where the named party was entitled to fees if it were successful.

There are two ways that this theory must be examined. First, can the New Trust Deed be read to require that the Debtor pay or assume responsibility for attorneys' fees that Chase incurs when Chase fails to perfect its lien through its own negligence and, as a result, must litigate with a third party—be it the Trustee in a bankruptcy or an actual bona fide purchaser for value. The New Trust Deed cannot be so interpreted.

The Court must interpret the New Trust Deed so as to make it, among other things, reasonable. See 1 Witkin *Summary of Calif. Law* (10th Ed. 2005) p. 840 § 750. It is reasonable that the Debtor would be responsible for Chase's bankruptcy related legal fees incurred solely as a result of her decision to file a bankruptcy such as fees related to filing a proof of claim. It is, however, nonsensical to read the New Trust Deed as allowing Chase to recover fees necessitated only because Chase acted negligently.

Further, any ambiguity as to Chase's ability to recover such fees from the Debtor must be interpreted against Chase—the author of the New Trust Deed. *Id.* at p. 848 § 757. The New Trust Deed is a standard document prepared by Chase and used in consumer transactions. There is no doubt who had the superior bargaining power here, and this underscores the appropriateness of not interpreting the New Trust Deed to allow Chase to recover fees necessitated by its own negligence from the Debtor.

The second question is whether Chase could recover from the Debtor if forced to litigate with the Debtor as a result of its own negligent failure to enforce the contract. The Court finds this only slightly more probable. The Debtor had an obligation to provide security. To the extent Chase, through negligence or otherwise, failed to perfect its lien, however, the New Trust Deed does not clearly obligate the Debtor to take proactive steps to assist Chase in protecting and preserving its collateral. If such a contractual obligation does exist and if the Debtor resisted such a contractual obligation, Chase might correctly recover some quantum of attorneys' fees notwithstanding its own negligence. But even then, the attorneys' fees award

would be closely scrutinized. Thus, while the Court finds that this is a possibility, the Court, again, finds it an inadequate basis for an award of fees here due to the fact that Chase did not advance any such theories. Chase did not assert any contractual rights whatsoever. Chase did not request any affirmative action on the part of the Debtor. Chase merely noted, as is conceded, that the Debtor previously signed a trust deed and intended thereby to collateralize the obligation to Chase. It requested that this Court determine the legal consequences of its failure to record the trust deed in a timely fashion. The Court does not find the attorneys' fees language sufficiently broad to allow fee recovery by Chase had it prevailed in the Chase Adversary.

## CONCLUSION.

Therefore, based on the foregoing, the Court concludes that the Trustee is not entitled to recovery his attorneys' fees from Chase. Chase and the Trustee are ordered to meet and confer regarding a form of order that takes into account all prior rulings of this Court and that resolves any unresolved matters (or if open issues remain provides a timetable and method for resolution) so that finality, at least at the bankruptcy court level, can be achieved. This order should be submitted jointly by the parties within 14 days.