[No. F061767. Fifth Dist. Dec. 9, 2011.]

CARGILL, INC., et al., Plaintiffs and Respondents, v.
DANIEL SOUZA, as Trustee, etc., et al., Defendants and Appellants.

COUNSEL

Felger & Associates and Warren P. Felger for Defendants and Appellants.

Germino, Amaral & Jordan, Scott Jordan and Edward M. Amaral for Plaintiffs and Respondents.

OPINION

**LEVY, Acting P. J.**—Appellants, Daniel and Joyce Souza, made loans to Manuel and Esmeralda Teixeira evidenced by promissory notes and secured by an interest in dairy cattle and farm equipment. Respondent, Cargill, Inc. (Cargill), was an unsecured creditor of the Teixeiras. Upon the Teixeiras' default on the promissory notes, the Souzas and the Teixeiras entered into a "TRANSFER IN LIEU OF FORECLOSURE AGREEMENT" (Transfer Agreement). Under this Transfer Agreement, the Teixeiras agreed to transfer the dairy cattle and farm equipment to the Souzas and the Souzas agreed not to sue the Teixeiras on the promissory notes. The Souzas also agreed to pay the Teixeiras' outstanding obligations listed on an exhibit to the Transfer Agreement. However, this exhibit was left blank.

Cargill filed a complaint against the Souzas to reform and enforce the Transfer Agreement as an alleged third party beneficiary. Cargill sought to schedule the Teixeiras' debt to it on the blank exhibit and then enforce appellants' covenant to pay that debt under the Transfer Agreement.

On the Souzas' motion, summary judgment was granted in their favor. As the "prevailing party," the Souzas moved for an award of attorney fees. The

trial court ruled that the attorney fees clause in the Transfer Agreement did not apply to third party beneficiaries and denied the Souzas' motion.

The Souzas contend that, if Cargill had prevailed on its complaint, it would have been entitled to attorney fees as a third party beneficiary pursuant to the attorney fees clause in the Transfer Agreement and thus the Souzas are entitled to attorney fees. As discussed below, the Souzas are correct. Therefore, the order will be reversed.

## BACKGROUND

The Teixeiras leased and operated a dairy. They borrowed $1 million from the Souzas to purchase dairy cattle and farm equipment. The Teixeiras executed two promissory notes and a security agreement granting the Souzas a secured interest in the dairy cattle and the equipment.

The Teixeiras had purchased feed from Cargill and owed Cargill approximately $262,000. This debt was unsecured.

Following the Teixeiras' default on the promissory notes, the Souzas and the Teixeiras executed the Transfer Agreement and the Souzas took possession of the collateral. As part of this agreement, the Souzas, referred to as "Lender," agreed that: "At Closing, Lender will pay the outstanding obligations of Borrower [the Teixeiras] with respect to the Dairy listed on Exhibit G, attached hereto and incorporated herein by this reference. The proceeds necessary to pay such obligations and all closing costs shall be additional advances under the Loan Documents and added to the [amount of debt due and owing to Lender under the promissory notes] . . . ." Exhibit G, entitled "BORROWER'S OBLIGATIONS," provided that the Souzas agreed to pay, on behalf of the Teixeiras, "the following outstanding obligations that [are] due and owing by Borrower to the following persons and/or entities." However, while this exhibit was signed by the parties, it stated it was "intentionally left blank."

The Teixeiras, as the "Borrower," further represented and warranted that "[a]ll persons and entities supplying material, labor or equipment to the Dairy have been paid or will be paid by Lender pursuant to this Agreement . . . ."

The Transfer Agreement also contained an attorney fees clause. This provision provides, in part, "In the event that any party hereto obtains a judgment in its favor in connection with the enforcement or interpretation of this Agreement, the prevailing party shall be entitled to recover from the losing party all of its attorney fees and costs . . . ."

After the Souzas took possession of the collateral, Cargill filed suit against the Teixeiras and the Souzas seeking to recover the debt for unpaid dairy cattle feed. The Teixeiras never appeared and subsequently filed for bankruptcy.

The operative pleading is Cargill's second amended complaint. In that complaint, Cargill alleged that the Souzas failed to pay Cargill as agreed in the Transfer Agreement as a third party beneficiary. Cargill also sought to reform the Transfer Agreement to expressly include its name and receivable on exhibit G as a creditor to be paid.

The Souzas then moved for summary judgment. Cargill did not oppose this motion and judgment was entered in favor of the Souzas. Thereafter, the Souzas moved for an award of attorney fees and costs as the prevailing party. The trial court denied the motion finding that the attorneys fee clause in the Transfer Agreement did not apply to third party beneficiaries.

## DISCUSSION

On appeal, a determination of the legal basis for an attorney fees award is reviewed de novo as a question of law. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127] (*Sessions*).)

■ Each party to a lawsuit must pay his or her own attorney fees except where a statute or contract provides otherwise. (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 450 [33 Cal.Rptr.3d 694].) ■ Where a contract specifically provides for an award of attorney fees, Civil Code section 1717 allows recovery of attorney fees by whichever contracting party prevails, regardless of whether the contract specifies that party. (*Sessions, supra,* 84 Cal.App.4th at p. 678.)

As a general rule, such attorney fees are awarded only when the lawsuit is between signatories to the contract. (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379–380 [30 Cal.Rptr.2d 536] (*Real Property Services*).) However, under some circumstances, the Civil Code section 1717 reciprocity principles will be applied in actions involving signatory and nonsignatory parties. (*Real Property Services, supra,* at p. 380.)

Two situations may entitle a nonsignatory party to attorney fees. First is where the nonsignatory party "stands in the shoes of a party to the contract." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897 [76 Cal.Rptr.3d 325] (*Blickman Turkus*).) Second is where the nonsignatory party is a third party beneficiary of the contract. Here,

the Souzas claim they are entitled to fees on the ground that Cargill sued them as a third party beneficiary of their contract with the Teixeiras.

■ " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.' " (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1232 [18 Cal.Rptr.3d 178].) However, a third party beneficiary need not be named in the contract where the agreement reflects the intent of the contracting parties to benefit the unnamed party. (*Sessions, supra*, 84 Cal.App.4th at p. 680.) The unnamed third party may enforce the contract if that party can show that he or she is a member of a class for whose benefit the contract was made. (*Prouty v. Gores Technology Group, supra*, 121 Cal.App.4th at p. 1232.) Whether the signatory parties actually promised the performance sought by the third party beneficiary is largely a question of interpreting the written contract. (*Sessions, supra*, 84 Cal.App.4th at p. 680.)

■ Regarding nonsignatories to a contract with an attorney fees provision, the courts have developed the following rule: "Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." (*Real Property Services, supra*, 25 Cal.App.4th at p. 382.) Thus, if Cargill would have been entitled to attorney fees had it prevailed on its complaint as a third party beneficiary, the Souzas are entitled to their attorney fees as the prevailing parties.

As noted above, Cargill's action was premised on its claim that it was a third party beneficiary of the Transfer Agreement as an unsecured creditor of the Teixeiras and that exhibit G to the Transfer Agreement should be reformed to include the Teixeiras' debt to Cargill as an obligation to be paid by the Souzas. The issue for this court is whether the Transfer Agreement's language evidences an agreement or intent on the part of the Souzas and the Teixeiras to benefit the Teixeiras' other creditors.

The case law pertaining to alleged third party beneficiaries in this context sets forth various factors for this analysis. In *Sessions*, the plaintiff, a payroll management company, alleged that a subcontractor had failed to reimburse it for wages it paid to the subcontractor's employees. The plaintiff sued the general contractor on the theory that it was a third party beneficiary of the contract between the general contractor and the subcontractor. The trial court sustained the general contractor's demurrer and then granted its motion for attorney fees pursuant to the contract's attorney fees clause. (*Sessions, supra*, 84 Cal.App.4th at pp. 675–677.)

The appellate court reversed this award. The *Sessions* court determined that the nonsignatory plaintiff could not have recovered fees had it won the action because the contract did not reflect the intent on the part of the general contractor and the subcontractor to include the plaintiff within its attorney fees clause. (*Sessions, supra*, 84 Cal.App.4th at p. 680.) Rather, the contract specifically stated that " '[e]xcept as specifically prescribed herein, *this Agreement shall not create any rights of or confer benefits upon, third parties.*' " (*Ibid.*) Further, the attorney fees clause permitted recovery of fees " '[i]n the event it becomes necessary for *either party* to enforce the provisions of this Agreement . . . .' " (*Id.* at p. 681.) The court noted that " '[e]ither' refers only to the two parties to the contract . . ." and that if the parties had "wanted to include someone else, their contract would have referred to 'any' party." (*Ibid.*) The court further opined that the word " 'party' limits recovery of attorney fees to a 'party' to the contract . . ." and observed that the contract did not expressly recognize the plaintiff. (*Ibid.*)

Similarly, in *Blickman Turkus, supra*, 162 Cal.App.4th at page 896, the court found that an attorney fees provision permitting fees in " 'any litigation *between the parties hereto* to enforce any provision of this Agreement . . .' " by its plain terms limited fees to litigation between the signatories to the contract.

In contrast, the appellate court upheld an award of attorney fees to a signatory defendant who successfully defended a breach of contract claim brought by a third party beneficiary in *Real Property Services*. There, a city and a developer entered into a lease agreement for the construction of a movie theater complex. In the lease, the city expressly consented to the developer subleasing the facility to Real Property Services. When the construction faltered and the city and developer terminated the lease, Real Property Services sued the city for breach of contract and for attorney fees under the lease agreement between the city and the developer. (*Real Property Services, supra*, 25 Cal.App.4th at pp. 377–378.)

Although the attorney fees clause in the *Real Property Services* lease specified that fees were permitted " '[i]n the event of any action or proceeding brought by either party against the other under this Lease,' " the court held that the nonsignatory plaintiff would have been entitled to attorney fees had it prevailed. (*Real Property Services, supra*, 25 Cal.App.4th at pp. 377, 383–384.) The court noted that the lease between the city and the developer specifically provided for an award of attorney fees to enforce the contract and that the lease expressly provided for Real Property Services to be the sublessee who would operate the movie theater. Accordingly, the lease established a nexus between Real Property Services and the city. Therefore, the court held, Real Property Services was entitled to proceed against the city

for its claimed breach of the lease and the city was potentially liable for any breaches it might have committed, including costs and attorney fees. (*Id.* at p. 383.)

Attorney fees were also permitted in a third party beneficiary context in *Loduca v. Polyzos* (2007) 153 Cal.App.4th 334 [62 Cal.Rptr.3d 780] (*Loduca*). There, Loduca, a property owner who was building a custom home, sued a subcontractor for breach of the contract between the subcontractor and the general contractor as a third party beneficiary. Following a judgment in Loduca's favor, the trial court awarded Loduca attorney fees. (*Id.* at pp. 337–340.)

In *Loduca*, the defendant did not dispute that Loduca was a third party beneficiary to the contract. The contract expressly named Loduca and stated the work was to be done according to plans developed for Loduca's home. Thus, the court concluded that Loduca "obviously was an intended third party beneficiary." (*Loduca, supra,* 153 Cal.App.4th at p. 343.) Further, the attorney fees clause made no reference to a particular party to the contract bringing the suit. Rather, it simply stated that if a court action is brought, presumably on the contract, the prevailing party was to be awarded attorney fees. (*Ibid.*) Under these circumstances, the appellate court concluded that it was apparent that the contractor and the subcontractor intended Loduca's enforcement right to include a right to attorney fees. (*Id.* at pp. 343–344.)

The contract in this case falls between *Sessions* and *Blickman Turkus* and *Real Property Services* and *Loduca*. On the one hand, unlike *Real Property Services* and *Loduca*, Cargill was not expressly named in the Transfer Agreement. Nevertheless, the Souzas and the Teixeiras expressed the intent to pay the Teixeiras' creditors, of which Cargill was one, as part of the transfer of the collateral from the Teixeiras to the Souzas.

On the other hand, unlike *Sessions* and *Blickman Turkus*, the Transfer Agreement's attorney fees clause does not express a clear intent to limit attorney fees to the signatories to the contract. In *Sessions*, the clause permitted recovery of fees if it became necessary for *either party* to enforce the agreement. The *Sessions* court noted that *either* refers only to the two parties to the contract and that the parties would have referred to "*any party*" had they wanted to include someone else. Similarly, in *Blickman Turkus*, the attorney fees clause applied to litigation *between the parties hereto*. In contrast, the Transfer Agreement permits recovery of fees when "*any party* hereto obtains a judgment in its favor . . ." (italics added).

The question before this court is whether Cargill would have been entitled to attorney fees if it had prevailed in its action on the Transfer Agreement.

The fact that Cargill did not prevail does not affect this analysis. Rather, we must look to the language of the Transfer Agreement to determine whether the Souzas and the Teixeiras intended to benefit the Teixeiras' other creditors.

■ Although Cargill was not expressly named in the Transfer Agreement, the agreement nevertheless reflects the intent to benefit the unnamed creditors. The Souzas agreed to pay the Teixeiras' outstanding obligations with respect to the dairy and the Teixeiras warranted that all such obligations had been paid or would be paid by the Souzas. This intent is also reflected in the attorney fees clause. The language used does not necessarily limit attorney fees to litigation between the signatories. Rather, the attorney fees are available to "any party" thus expressing the intent "to include someone else," such as a third party creditor. (*Sessions, supra*, 84 Cal.App.4th at p. 681.)

Based on the above, we conclude the attorney fees clause would have applied to Cargill had it prevailed. Accordingly, the Souzas are entitled to reasonable attorney fees incurred in defending against Cargill's action.

## DISPOSITION

The order is reversed and the matter remanded to the trial court to determine a reasonable attorney fees award. Costs on appeal are awarded to appellants.

Kane, J., and Franson, J., concurred.